**William BARNES, Plaintiff,**

v.

**Ron COCHRAN, as Sheriff of Broward County, Defendant.**

**No. 95–6530–CIV.**

United States District Court,
S.D. Florida.

Aug. 18, 1996.

Shelley B. Mund, Coral Springs, FL, for Plaintiff.

Carmen M. Rodriguez, Whitelock, Rodriguez & Williams, Fort Lauderdale, FL, for Defendant.

## ORDER

GONZALEZ, District Judge.

This Cause has come before the Court upon Defendant's Motion for Summary Judgment, filed on June 26, 1996, and Plaintiff's Motion for Partial Summary Judgment, filed on June 27, 1996. The motions have been fully briefed and are ripe for disposition.

Plaintiff brought this action pursuant to the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, et seq., and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, et seq., based upon Defendant's allegedly discriminatory refusal to hire Plaintiff as a corrections deputy. In his three count complaint, Plaintiff seeks damages, front pay, back pay, instatement to the position applied for, and an injunction prohibiting Defendant from conducting pre-employment psychological evaluations of its job applicants. Both parties have moved for summary judgment.

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986), and any doubts in this regard should be resolved against the moving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2553. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2553–54.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more

than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). According to the plain language of Fed.R.Civ.P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514–15. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990).[1] If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249–50, 106 S.Ct. at 2506–07, 2511.

Under the Americans with Disabilities Act ("ADA"), it is unlawful for an employer to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... hiring...." The ADA defines disability as follows:

> with respect to an individual—
>
> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102. Furthermore, the statute defines a qualified individual as:

> an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the em-

---

**1.** The standard for granting summary judgment mirrors the standard for directing a verdict under Fed.R.Civ.P. 50(a). *Anderson v. Liberty Lob-* *by, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

ployment position that such individual holds or desires.

42 U.S.C. § 12111(8).

■ Because Plaintiff bears the burden of proving that he was discriminated against on the basis of a disability, perceived disability, or on account of his age, he must first establish a prima facie case of discrimination. *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989). To do so, Plaintiff may rely on direct evidence of discriminatory intent, statistical evidence, or the four-pronged test set out in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Id.,* at 581; *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913 (11th Cir. 1993). In this case, Plaintiff is relying on the third method of proof.

■ Under *McDonnell Douglas,* the Plaintiff bears the initial burden of establishing a prima facie case of discrimination. This is done by showing (1) membership in a protected class; (2) qualification for the position sought; (3) rejection by the prospective employer; and (4) that the prospective employer hired a person outside of the protected class. *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1532 n. 14 (11th Cir.1987). An overly strict formulation of the requirements of showing a prima facie case should be avoided. *Carter,* 870 F.2d at 583.

■ Once a plaintiff has established his prima facie case, the burden shifts to the defendant to *produce* some "legitimate non-discriminatory reason" for the adverse employment decision. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). "Because the defendant need only produce, not prove, a nondiscriminatory reason, this burden is 'exceedingly light.'" *Perryman v. Johnson Products Co., Inc.,* 698 F.2d 1138, 1142 (11th Cir.1983), *quoted in, Walker v. NationsBank of Florida, N.A.,* 53 F.3d 1548, 1556 (11th Cir.1995). Once the defendant has met his burden of production, the plaintiff must prove by a preponderance of the evidence that the employer had a discriminatory intent, and that the reason given for the adverse employment decision was merely

pretextual. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

I. Plaintiff's Claim Under the ADA:

■ Defendant seriously disputes that Plaintiff has established a prima facie case that he was discriminated against on the basis of a perceived disability. Defendant asserts that he and his department never perceived Plaintiff as disabled, but instead concluded that he was unqualified to meet the essential requirements of the position he sought to fill. In this respect, Defendant seems to confuse the term "disability" with "qualified individual." The mere fact that Defendant found Plaintiff unqualified does not mean that he did not perceive him as being disabled; these notions are not mutually exclusive. While Plaintiff's evidence is not strong, when viewed in the light most favorable to Plaintiff, one could draw a reasonable conclusion that he was both qualified and perceived as being disabled. Additionally, while Plaintiff has not shown that Defendant hired another individual who was not perceived as being disabled, the Court must avoid an overly strict formulation of the requirements for showing a prima facie case. *Carter,* 870 F.2d at 583. Thus, the Court is satisfied that Plaintiff has met his burden.

Defendant has produced two non-discriminatory reasons behind his decision not to hire Plaintiff. First, Defendant asserts that he relied upon information provided by Plaintiff during a pre-employment psychological examination performed by Defendant's examining psychologist, Dr. Harley V. Stock. In this examination, Plaintiff revealed that he had previously experienced flashbacks, nightmares, blackouts, and hallucinations when under stress. Specifically, according to Dr. Stock, Plaintiff related the following:

He indicates that he has experienced nightmares of

Vietnam, and the last time was a couple of months ago. He does indicate that most of the time he does not remember his dreams. He states that he had flashbacks of his service in Vietnam on three occasions. The last was just before he was fired. He described that occurring when he was flying to Savannah, Georgia on a

case. As the plane was taxiing on the runway, he looked out the window and saw a C–130 transport and a Quonset hut. He relates it looked like a concrete hut in Vietnam. He also notes that the pine trees transformed into palm trees. Although the individuals that were working on the runway at that time were wearing civilian clothing, he indicates that the clothing was transformed into military clothing. This flashback lasted a relatively brief period of time. The next occurrence was when he was working out in the gym doing lap pull-downs. He relates that "the next thing, I was hanging onto a helicopter skid. I saw the tail gunner." He indicates that a similar situation happened to him in Vietnam and he started to "fall off the helicopter." This flashback occurred about four years ago.

Stock's Deposition at 92–93 and Exhibit 1 thereto.

Dr. Stock also reviewed the findings of Plaintiff's physician, who found that the extreme anxiety and stress Plaintiff was experiencing as a police officer would account for the blackouts he was having. Stock Deposition, Exhibit 1. Finally, from several sources, Stock became aware of Plaintiff's prior alcohol use and alcohol related automobile accidents. Dr. Stock concluded that Plaintiff had difficulties in making appropriate judgments in during stressful situations. "Based upon his current clinical presentation," Dr. Stock recommended Plaintiff as "'Marginally Suitable.'" Stock's deposition, Exhibit 1. Dr. Stock gave Plaintiff a rating of four on a scale of one to ten, with ten being the highest. This rating is below Defendant's employment standard. Barnhart Deposition at 38.

Next, Defendant asserts that he refused to hire Plaintiff due to Plaintiff's past criminal record. It is undisputed that Plaintiff had been arrested on three occasions for driving under the influence of alcohol before he applied for a job with Defendant. Defendant was arrested after a car accident in 1985 for driving under the influence of alcohol; he was arrested and convicted again in 1987 for driving under the influence of alcohol; and finally, Plaintiff was arrested six months la-

ter for driving under the influence of alcohol after he drove a Sheriff's vehicle into a wall. Stock Deposition, Exhibit 1; Defendant's Reply to his Motion for Summary Judgment, Exhibit 1.

The reasons for not hiring Plaintiff produced by Defendant are legitimate and nondiscriminatory. They are directly related to the essential job functions Plaintiff would have been required to perform. Hely Affidavit, ¶ 7; *see also* 42 U.S.C. § 12111(8) ("For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential. . . ."). While they may not be conclusive evidence that Plaintiff was unqualified for the position he sought, they are legitimate, nondiscriminatory grounds for refusing to hire any applicant. Thus, Defendant has met his "exceedingly light" burden of production, and the burden is shifted to Plaintiff to prove intentional discrimination.

■ Plaintiff has utterly failed meet his burden. Plaintiff raises two arguments to show that Defendant's stated reasons for not hiring him were pretextual: "First, the Defendant has a policy on hiring individuals with prior DUI convictions, which policy does not impose a per se exclusion of such individuals;" and "[s]econd, by Defendant's own admission, Plaintiff was eligible for reemployment despite the misconduct, as is evidenced by the fact that Mr. Whitelock advised Plaintiff there was no restriction on his ability to reapply." Such "evidence" is hardly sufficient to show intentional discrimination. Plaintiff would have to prove a much greater degree of mendacity before a reasonable and fair minded jury could conclude that Defendant's actions were based on "archaic attitudes," "erroneous perceptions," "speculation," or "myths." *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir.1995). At best, Plaintiff barely satisfied the burden of proving his prima facie case. Without more, he cannot overcome Defendant's legitimate reasons for not hiring him. Accordingly, Defendant's motion shall be granted.

## II. Plaintiff's Claim Under ADEA

■ Plaintiff concedes that he has failed to establish even a prima facie case of age

discrimination. Plaintiff's Response at 18. Plaintiff, however, argues that he should be given additional time to respond to Defendant's motion as "Defendant has completely failed to provide satisfactory responses" to Plaintiff's discovery requests. Discovery, however, has been closed since April 30, 1996, and this is Plaintiff's first and only indication that Defendant's responses have been inadequate. Plaintiff was well aware of the deadline for filing motions for summary judgment in this case, and, for some inexplicable reason, failed to take any actions to obtain the evidence he needs to support his case. Accordingly, the Court will rule on Defendant's motion based upon the evidence before it. As Plaintiff has failed to present even a scintilla of evidence in his favor, Defendant's motion shall be granted.

### III. Defendant's Pre-employment Psychological Evaluation

■ Plaintiff alleges that Defendant's practice of having applicants submit to a pre-employment psychological evaluation violates the ADA. Accordingly, Plaintiff seeks an injunction to prevent such evaluations in the future.

At 42 U.S.C.A. § 12112(d), the ADA provides as follows:

(1) In general

The prohibition against discrimination as referred to in subsection (a) of this section shall include medical examinations and inquiries.

(2) Preemployment

(A) Prohibited examination or inquiry

Except as provided in paragraph (3), a covered entity shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability.

(B) Acceptable inquiry

A covered entity may make preemployment inquiries into the ability of an applicant to perform job-related functions.

(3) Employment entrance examination

A covered entity may require a medical examination after an offer of employment has been made to a job applicant and prior to the commencement of the employment duties of such applicant, and may condition an offer of employment on the results of such examination, if—

(A) all entering employees are subjected to such an examination regardless of disability;

(B) information obtained regarding the medical condition or history of the applicant is collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record, except that—

(i) supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations;

(ii) first aid and safety personnel may be informed, when appropriate, if the disability might require emergency treatment; and

(iii) government officials investigating compliance with this chapter shall be provided relevant information on request; and

(C) the results of such examination are used only in accordance with this subchapter.

(4) Examination and inquiry

(A) Prohibited examinations and inquiries

A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

(B) Acceptable examinations and inquiries

. . . . A covered entity may make inquiries into the ability of an employee to perform job-related functions.

(C) Requirement

Information obtained under subparagraph (B) regarding the medical condition or history of any employee are subject to the requirements of subparagraphs (B) and (C) of paragraph (3).

The Equal Employment Opportunity Commission ("EEOC") has also adopted regulations interpreting the relevant provision of the ADA. While not binding on this Court, such administrative interpretations "do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). The regulations provide that an employer may make "pre-employment inquiries into the ability of an applicant to perform job-related functions, and/or may ask an applicant to describe or to demonstrate how, with or without reasonable accommodation, the applicant will be able to perform the job related functions." 29 C.F.R. § 1630.14(a). This regulation was drafted as a result of employers inquiries as to "whether an employer may ask how an individual will perform a job function when the individual's known disability appears to interfere with or prevent performance of job-related functions." 56 Fed.Reg. 35725, 35732 (1991). These regulations, combined with the Enforcement Guidance issued by the EEOC, make clear that it is appropriate for an employer to undertake a limited inquiry into the ability of an applicant to perform the job he is seeking with or without reasonable accommodation. What the ADA prohibits, however, are specific inquiries into the details of an applicant's disability. Thus, an employer cannot ask how an individual became disabled or whether a particular condition "is indicative of an underlying impairment." 29 C.F.R. Pt. 1630 App., "Interpretive Guidance on Title I of the Americans with Disabilities Act." *See also,* Equal Employment Opportunity Commission, Enforcement Guidance: Pre–Employment Disability–Related Questions and Medical Examinations (Oct. 10, 1995) (reprinted in EEOC Compl.Man. (CCH) ¶ 6093, at 5371) (hereinafter "Enforcement Guidance").

Currently, Defendant requires all applicants for employment to submit to a pre-employment psychological examination. Defendant asserts that this examination is not a prohibited medical inquiry as outlined in the above provisions, but is instead merely used to determine whether a candidate is qualified for the position which he seeks. According to Defendant, a medical examination is only impermissible when the examiner intends to determine solely whether the applicant has a disability. Defendant's Response to Plaintiff's Motion for Summary Judgment, at 4, citing § 405.7197, Enforcement Guidance.

On this issue, however, the statute is clear. The ADA prohibits pre-offer "medical examinations." 42 U.S.C. § 12112(d)(2). This prohibition includes psychological examinations. *See* Equal Employment Opportunity Commission Enforcement Guidance Under the Americans With Disabilities Act of 1990 n. 47 (EEOC Notice 915.002) (May 19, 1994), citing H.R.Rep. No. 485 (Pt. 3), 101st Cong., 2d Sess. 46 (1990), *reprinted in* U.S.C.C.A.N. vol. 4, Legis.Hist. 445, 469) (defining "medical examinations" as "procedures or tests that seek information about the existence, nature, or severity of an individual's physical or mental impairment, or that seek information regarding an individual's physical or psychological health.") *quoted in Grenier v. Cyanamid Plastics, Inc.,* 70 F.3d 667, 675 (1st Cir.1995). The central purpose of this prohibition is to prevent employers from basing their decisions on an applicant's disabilities instead of on his or her qualifications. *Grenier,* at 677, citing H.R.Rep. 485; Guidance 1994 § IV.A; *see also,* 29 C.F.R. Pt. 1630 App. at 417.[2]

The Court concludes that the pre-employment medical examination conducted by Defendant violated the ADA, 42 U.S.C. § 12112(d)(2)(A). This conclusion is compelled by the nature and extent of the examination performed, as reflected in Dr. Stock's Report, and by the fact that the examination was performed by a licensed psychologist. Dr. Stock's Report reflects that Plaintiff was referred for a "clinical evaluation ...." Dr. Stock's questions covered not only covered a wide range of incidents in Plaintiff's life, but probed areas tending to disclose specific psychological disabilities, such as Post Traumatic Stress Disorder. *See* Report, at 7 ("His

---

2. For a general review of permissible inquiries, *see* Frank C. Morris, Jr., "Americans With Disabilities Act: Medical Examinations and Inquiries," Q217 ALI–ABA 283, (1992).

current psychological testing does not suggest any underlying post-traumatic stress disorder, but does acknowledge that under stress he experiences flashbacks, nightmares, and other types of adjustment disorders."). Dr. Stock also reviewed the Plaintiff's medical records, which were compiled by other medical professionals. Finally, Dr. Stock performed the Minnesota Multiphasic Personality Inventory, the Inwald Personality Inventory, the Otis Lennon School Ability Test, the Hilson Profile/Success Quotient Test, and the California Psychological Inventory. Such an extensive examination constitutes a prohibited pre-employment medical examination.

The ADA does not completely preclude Defendant from making pre-employment inquiries into the abilities of its applicants to perform the jobs they seek, but instead "permits an 'interactive process' beneficial to both the employer and applicant." *Grenier*, 70 F.3d at 675. Nor must Defendant ignore any disabilities of which it is aware. Indeed, the permissible range of an employer's inquiry may be extended when it is aware of an applicant's disability. *Id.*, at 675 n. 4. Thus, Defendant may ask employees with known disabilities to describe how they could perform the job, with or without reasonable accommodation. Additionally, Defendant may also require a medical examination *after* an offer of employment is made, and condition the offer on the results of the examination. 42 U.S.C. § 12112(d)(3). Thus, Defendant may still require a psychological examination, and may even withdraw an offer of employment so long as its decision is job related and consistent with a business necessity, and no reasonable accommodation will enable the employee to perform the essential functions of the job.[3] 29 C.F.R. Pt. 1630 App, at 418, citing Conference Report, at 59–60; Senate Report, at 39; House Labor Report, at 73–74; House

Judiciary Report, at 43. According to the EEOC:

> This provision recognizes that in many industries, such as air transportation or construction, applicants for certain positions are chosen on the basis of many factors including physical and psychological criteria, some of which may be identified as a result of post-offer medical examinations given given prior to entry on duty. Only those employees who meet the employer's physical and psychological criteria for the job, with or without reasonable accommodation, will be qualified to receive confirmed offers of employment and begin working.

29 C.F.R. Pt. 1630 App., at 418.

The psychological examination conducted by Dr. Stock, however, was not the type the EEOC describes as a permissible pre-employment psychological examination, because it was "medical"; it "provide[d] evidence that would lead to identifying a mental disorder or impairment." EEOC Guidance on Preemployment Inquiries Under the Americans with Disabilities Act, Compliance Manual Vol. II (Oct. 10, 1995), at 6. While the ADA does permit pre-employment inquiries into an applicant's ability to perform the essential functions of a job, it does not permit the type of extensive psychological examination that took place here. Accordingly, Plaintiff's Motion for Summary Judgment will be granted on this issue.

■ As discussed above, however, Plaintiff has not advanced sufficient evidence to conclude that Defendant's decision not to hire him was motivated by discriminatory intent. Thus, notwithstanding that "the prohibition against discrimination as referred to in subsection (a) of this section shall include medical examinations and inquiries," the Court cannot conclude that any damages flowed from Defendant's violation of the ADA. 42 USCA § 12112(d)(1). In essence,

---

**3.** While the pre/post-employment medical examination distinction may seem pointless, it actually serves several important functions. First, it allows an applicant to demonstrate that he has the necessary job qualifications without regard to any disability; second, by permitting the examination to take place only after an offer of employment is made, it forces employers to demonstrate

that their reason for not hiring an applicant is job related, or a business necessity; third, this scheme requires an employer to make an effort to reasonably accommodate an applicant's disability. Stacy J. Bagley, "Enough is Enough! Congress and the Courts React to Employers' Medical Screening and Surveillance Procedures," 99 Dick.L.Rev. 723, 730–31 (1995).

Defendant would have reached the same conclusion at a later stage if it had conducted a post-employment medical examination. Moreover, Defendant has put forth sufficient non-discriminatory reasons for not hiring Defendant to withstand any attack that could have followed the withdrawal of an offer to Plaintiff. Finally, as Plaintiff himself asks for nothing more than an injunction in Count III of his Complaint, that is the only relief that shall be granted.

The Court has reviewed the motions and the record, and being otherwise duly advised, it is hereby:

**ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment is **GRANTED** in part;

2. Judgment is hereby entered in favor of Defendant and against Plaintiff on Counts I and II of Plaintiff's Complaint, and Plaintiff shall take nothing on those claims;

3. The remainder of Defendant's Motion for Summary Judgment is **DENIED;**

4. Plaintiff's Motion for Partial Summary Judgment is **GRANTED** in part;

5. Judgment is hereby entered in favor of Plaintiff and against Defendant on Count III of Plaintiff's Complaint;

6. Defendant is hereby permanently enjoined from conducting any further pre-employment psychological or physical medical examinations, as described and defined in the Americans with Disabilities Act, the EEOC's Regulations, and the guidance materials published by the EEOC and referred to in this Order;

7. The remainder of Plaintiff's Motion for Partial Summary Judgment is **DENIED.**