[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
05/28/99
THOMAS  K. KAHN
CLERK

_____

No. 98-4163

_____

D. C. Docket No. 96-2281-CIV-DMM

WILLIAM WATSON,

Plaintiff-Appellant,

versus

CITY OF MIAMI BEACH,

Defendant-Appellee

.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 28, 1999)**

Before TJOFLAT, BLACK and CARNES, Circuit Judges.

BLACK, Circuit Judge:

Appellant William Watson, a police officer for the City of Miami Beach (the City), brought this action against his employer under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213. Watson challenges the district court's grant of summary judgment in favor of the City on his claims that: (1) the City discriminated against him by relieving him from duty pending a fitness for duty examination; (2) the City violated the ADA's medical examination and inquiries prohibitions by ordering him to complete a fitness for duty examination; and (3) the City violated the ADA's medical examination and inquiries prohibitions by requiring him to undergo a tuberculosis examination and disclose his HIV/AIDS status as part of a mandatory department-wide tuberculosis testing program.[1] As to the first claim, the district court reasoned Watson failed to present sufficient evidence to show he was an individual with a disability within the meaning of the Act. As to the second and third claims, the court reasoned Watson failed to present evidence from which a reasonable juror could reject the City's evidence that the fitness for duty and tuberculosis examinations were job-related and consistent with business necessity. We affirm.

---

[1] Watson does not appeal the district court's grant of summary judgment in favor of the City on his claim that the City violated the ADA by disclosing his fitness for duty examination to other police officers.

## I.   BACKGROUND

Appellant Watson has been a police officer with the City of Miami Beach since 1984.  In May or June 1995, Major Steve Robbins, then the Commander of the Administration Bureau, became increasingly concerned about what he perceived to be Watson's display of unusually defensive and antagonistic behavior towards his co-workers and supervisors.  As a result, he began an investigation.  Major Robbins' investigation revealed 10 Internal Affairs' investigations of complaints by and against Watson, as well as 11 incidents from 1992 to 1995 including a disciplinary action and various grievances by Watson against the Police Department.

In July 1995, another incident occurred at Mount Sinai Hospital (Mount Sinai).  At that time, Mount Sinai Hospital was conducting a mandatory, department-wide tuberculosis testing program for the Police Department due to police contact with high risk individuals.  As part of the tuberculosis examination, Mount Sinai required an individual to disclose his or her HIV/AIDS status because diagnosis and treatment of tuberculosis differ for those individuals with HIV/AIDS.  On July 24, 1995, Watson went to Mount Sinai, but refused to take the examination because it required him to disclose his HIV/AIDS status.  Watson complained the City was out to get him.  Nurse Tibbits, the manager of employee health services at Mount Sinai, found his behavior

to be rude and unreasonable. Nurse Tibbits informed Major Robbins of Watson's behavior and suggested a fitness for duty examination.

Based on Major Robbins' investigation of Watson's pattern of conduct and confrontation with Nurse Tibbits, the City relieved Watson of duty with pay on October 9, 1995 and required him to undergo a fitness for duty evaluation with Dr. Axelbred. Dr. Axelbred found Watson was "somewhat obsessional in style and experiencing symptoms typically associated with stress." Dr. Axelbred recommended Watson return to work with appropriate stress management counseling. Watson returned to work eight days later and continues to work as a police officer for the City.

## II. ANALYSIS

We review a district court's grant of summary judgment de novo. *Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1374 (11th Cir. 1996). Summary judgment is appropriate when the pleadings, depositions, and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2553 (1986) (quoting Fed.R.Civ.P 56(c)). In making this assessment, we must view the evidence in the light most favorable to the nonmoving party. *Welch v. Celotex Corp.,* 951 F.2d 1235, 1237 (11th Cir. 1992).

A.    Disability Discrimination

Watson contends the City discriminated against him by relieving him from duty pending a fitness for duty examination, in violation of 42 U.S.C. § 12112(a). To state a case of unlawful discrimination under the ADA, a plaintiff must first prove he has a disability as defined by the Act. *Gordon v. E.L. Hamm & Associates, Inc.,* 100 F.3d 907, 910 (11th Cir. 1996). Watson alleges he is disabled under § 12102(2)(C). Under that provision, an individual is deemed to be disabled if he is regarded as having a mental impairment that substantially limits one or more of his major life activities. *Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1327 (11th Cir. 1998).

Watson failed to present any evidence from which a rational juror could find he was regarded as having a mental impairment. Watson points to evidence which shows other officers regarded him as "paranoid," "disgruntled," "oppositional," "difficult to interact with," "unusual," "suspicious," "threatening," and "distrustful." These characterizations of Watson's behavior merely show he had serious personality conflicts with members of his department. Such conflicts do not rise to the level of a mental impairment under the ADA. *See Stewart v. County of Brown*, 86 F.3d 107, 111 (7th Cir. 1996) (holding that an excitable, emotionally imbalanced individual is not disabled under the ADA). We affirm the district court's grant of summary judgment in favor of the City under § 12112(a).

5

B.    Prohibited Medical Examination and Inquiries

Watson alleges the fitness for duty and tuberculosis examinations were prohibited medical inquiries, in violation of 42 U.S.C. § 12112(d)(4)(A). That provision states:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

This Court has not addressed whether this provision applies to a non-disabled employee. We need not resolve this issue because we conclude the fitness for duty and tuberculosis examinations were job-related and consistent with business necessity. *Cf. Armstrong v. Turner Industries, Inc.,* 141 F.3d 554, 558 (5th Cir. 1998) (holding plaintiff did not have standing rather than addressing the difficult issue whether the medical examination and inquiries prohibitions apply to non-disabled employees).

1.    Fitness for Duty Examination

In any case where a police department reasonably perceives an officer to be even mildly paranoid, hostile, or oppositional, a fitness for duty examination is job-related and consistent with business necessity. Police departments place armed officers in positions where they can do tremendous harm if they act irrationally. Contrary to Watson's contention, the ADA does not, indeed cannot, require a police

department to forgo a fitness for duty examination to wait until a perceived threat becomes real or questionable behavior results in injuries.

The evidence shows the City had good cause for concern as to whether Watson was fit to be a police officer. Watson had overreacted in many situations and his colleagues worried he might be paranoid. On this basis, we conclude there is no evidence from which a rational juror could find the City acted improperly by ordering Watson to undergo the fitness for duty examination.

2. Tuberculosis Examination

The EEOC Compliance Manual, which is helpful in a situation such as this, explains that "periodic medical examinations for public safety positions that are narrowly tailored to address specific job-related concerns and are shown to be consistent with business necessity would be permissible." *EEOC Enforcement Guidance: Psychiatric Disabilities and the Americans With Disabilities Act* (March 25, 1997), *reprinted in 3 EEOC Compliance Manual* No. 222: 2336 n.41 (BNA 1998). The evidence presented showed that the tuberculosis examination required by the City in this case addressed unrefuted health concerns regarding officer safety. Additionally, the evidence showed that disclosing one's HIV/AIDS status as part of the examination is necessary to properly diagnose and treat an individual with

tuberculosis.[2] Accordingly, there is no evidence from which a reasonable jury could find the City acted improperly in testing for tuberculosis and requiring Watson to disclose his HIV/AIDS status as part of the examination.

## III. CONCLUSION

Based on the record in this case, Watson is not an individual with a disability as defined by the ADA, and the fitness for duty and tuberculosis examinations were job-related and consistent with business necessity. Accordingly, we affirm the district court's grant of summary judgment in favor of the City.

AFFIRMED.

---

[2] On appeal, Watson argues for the first time no additional burden would be placed on the City if it were required to alter the timing of the HIV/AIDS inquiry until after the examination. We do not address this argument because Watson failed to present it to the district court. *See Narey v. Dean*, 32 F.3d 1521, 1526-27 (11th Cir.1994).