**Ron MICKENS, Plaintiff,**

v.

**POLK COUNTY SCHOOL BOARD, Defendant.**

**No. 8:00–cv–1725–T–23TGW.**

United States District Court, M.D. Florida, Tampa Division.

April 4, 2006.

---

---

Timothy G. Schoenwalder, Schoenwalder Law Firm, Tallahassee, FL, for Plaintiff.

Charles W. Bridges, II, School Board of Polk County, Legal & Auditing Services, Warren Andrew Crawford, Dabney Loy Conner, Sean Riley Parker, Boswell & Dunlap, LLP, Bartow, FL, for Defendant.

**ORDER**

MERRYDAY, District Judge.

Polk County School Board ("the School Board") renews its motion (Doc. 253) pursuant to Rule 50(b), Federal Rules of Civil Procedure, for judgment as a matter of law on Ron Mickens's ("Mickens") claim under the Americans with Disabilities Act ("the ADA").

In August, 2000, Mickens, an African–American, sued (Doc. 1) the School Board and Superintendent Glenn Reynolds[1] for employment discrimination on the basis of race and perceived mental disability. Mickens also alleged that the School Board unlawfully retaliated against him for statements protected by Title VII and the First Amendment and that the School Board violated his equal protection and due process rights under the Fourteenth Amendment. The School Board timely answered (Doc. 3) and denied any allegation of wrongdoing.

The School Board moved for summary judgment on each of Mickens's claims (Docs. 34, 35). A February 7, 2003, order (Doc. 156) adopted Magistrate Judge Thomas G. Wilson's recommendation (Doc. 134) and granted summary judgment in favor of the School Board on Mickens's equal protection and due process claims (which Magistrate Judge Wilson described as "patently meritless") (Doc. 134 at 22) and on that portion of Mickens's ADA claim alleging disability discrimination.

Mickens[2] advanced to trial on claims for (1) racial discrimination under Title VII, (2) retaliation under Title VII, (3) infringement of his First Amendment free speech

---

1. The claim against Superintendent Reynolds, which alleged conspiracy to deprive Mickens of his civil and constitutional rights, was dismissed on August 1, 2001 (Doc. 33).

2. Mickens intermittently has proceeded *pro se*, episodically dismissing his attorneys for alleged "malpractice," "betrayal," and participation in an "orchestrated conspiracy" to deprive him of his legal rights (Docs. 49, 76, 92, 97, 101).

protections under 42 U.S.C. § 1983, and (4) violation of the medical examination prohibition of the ADA. Upon the completion of Mickens's case-in-chief, the School Board moved (Doc. 242) pursuant to Rule 50(b) for judgment as a matter of law on all claims. Reserving ruling on the motion until the completion of evidence, the court granted the Rule 50(b) motion on Mickens's claim that the School Board violated his First Amendment right to free speech under 42 U.S.C. § 1983 but denied the motion on Mickens's three remaining claims. The jury returned a verdict (Doc. 247) in favor of the School Board and against Mickens on both Title VII claims (racial discrimination and retaliation) but found in favor of Mickens and against the School Board on the ADA medical examination claim. The jury awarded Mickens nothing for economic loss but $300,000.00 in non-economic damages ("pain and mental anguish").

As framed in the pretrial statement, Mickens's ADA claim alleges that the School Board violated 42 U.S.C. § 12112(d)(4) by "requiring the Plaintiff to undergo a psychological examination for an unwarranted reason" (Doc. 138 at 2). Renewing its motion for judgment as a matter of law, the School Board argues that Mickens failed to offer sufficient evidence to support submission to the jury of the School Board's alleged liability under the ADA. Specifically, the School Board argues that Mickens (1) failed to prove that he is a "qualified individual with a disability" under the ADA, (2) failed to "present any evidence sufficient to create a jury question on the 'job-relatedness' and 'business necessity'" of the School Board's request that Mickens undergo a psychological examination, and (3) failed to prove an injury-in-fact, a prerequisite to an award of damages.

A Rule 50(b) motion challenges "whether reasonable jurors could have concluded as this jury did based on the presented evidence." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1237 (11th Cir.2001)(citing *Quick v. Peoples Bank*, 993 F.2d 793, 797 (11th Cir.1993)). A movant under Rule 50(b) must prevail "if the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict." *Davis*, 245 F.3d at 1237 (citing *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989)). Alternatively, a jury's verdict must stand "if there is substantial evidence opposed to the motion such that reasonable people, in the exercise of impartial judgement, might reach differing conclusions." *Davis*, 245 F.3d at 1237.

## BACKGROUND

The School Board hired Mickens as a teacher in 1988, promoted him to assistant principal in 1993, and demoted him to a teacher in the fall of 1997. The School Board terminated Mickens in January, 1998, because, after he was demoted from assistant principal and offered employment as a teacher, he refused to report for work.

Mickens's employment difficulties began during his tenure as assistant principal for discipline at Boone Middle School. As assistant principal for discipline, Mickens's primary responsibility was to ensure the safety and welfare of the students on campus. On April 25, 1997, a dispute arose between Mickens and Ed Nixon ("Nixon"), a uniformed police officer who served as the school resource officer ("SRO"). Disagreeing with SRO Nixon over a student's discipline, Mickens expelled Nixon from the Boone Middle School campus. Dale McDonald ("McDonald"), the School Board's personnel investigator, subsequently determined that a loud and angry dispute between Mickens and Nixon had

occurred in front of the students (although Mickens disputed this characterization at trial). Soon after the dispute with SRO Nixon, Mickens received a written reprimand citing his unprofessional behavior and directing him to seek counseling through the School Board's "employee assistance program."

Denying that the School Board conducted a full and impartial investigation of the incident, Mickens protested the reprimand. On May 8, 1997, Eileen Killebrew ("Killebrew"), the principal of Boone Middle School, visited Mickens in his office to discuss both the reprimand and the precipitating incident with SRO Nixon. Having heard reports that Mickens discussed with others the incident with SRO Nixon, Killebrew reminded Mickens that she had instructed him not to discuss the incident while on the school's campus. Mickens denied that Killebrew ever made the request. When Killebrew asked Mickens whether he was calling her "a liar," he answered affirmatively. Killebrew immediately directed Mickens to leave the school campus for the day.

That same day, Killebrew sent to the School Board's superintendent, R. Glenn Reynolds ("Reynolds"), a letter stating that "[d]ue to Mr. Mickens' insubordinate, disrespectful behavior to me, I am asking that you suspend him . . . from his duties as assistant principal . . . [and] that you consider reassigning him to another location. Not only has he compromised his working relationship with me, he has also put his effectiveness here at the school in jeopardy by failing to behave in a professional manner" (Doc. 22).

The next day, Mickens received a letter from Reynolds directing Mickens to submit to both a medical and psychological examination. Mickens selected a physician and a psychologist and underwent a medical and psychological examination. Al-

though Mickens authorized release to the School Board of the medical examination's findings (Mickens was in "perfect health"), Mickens denied the psychologist's request for permission to disclose the psychological examination's results to the School Board. William Londeree, the School Board's director of employee relations, repeatedly asked Mickens to release the psychological examination results, but Mickens refused.

On July 23, 1997, the School Board transferred Mickens from assistant principal for discipline at Boone to assistant principal for discipline at McLaughlin Middle School ("McLaughlin"). On the morning of August 5, 1997, Mickens's first day at McLaughlin, Mickens confronted McLaughlin's dean of students, Alan Jostes ("Jostes"), about the duty assignment list. Mickens objected that Jostes had assigned himself certain duties that Mickens considered properly reserved for the assistant principal of discipline. At trial, Jostes described Mickens's demeanor during this encounter as both "volatile" and "threatening" (again, at trial, Mickens disputed this characterization).

At a subsequent meeting between Mickens, Jostes, and McLaughlin's principal, Ronald Rizer ("Rizer"), Mickens informed Rizer that, if Jostes failed to cooperate, Mickens would promptly replace him with someone cooperative. At this meeting, Mickens said to Jostes, "Don't talk down to me." Rizer informed Mickens that he (Rizer) was the principal in charge of the school, to which Mickens responded that he (Mickens) was the assistant principal for administration of the school. Conceding the substance of this exchange at trial, Mickens testified that he nonetheless believed that everyone had resolved their differences and that he would be able to work productively at McLaughlin.

On August 8, 1997, Mickens attended a district-wide meeting of assistant princi-

pals, SROs, and deans of students. At this meeting, Mickens openly challenged the SROs' authority on school campuses and demanded written clarification of the SROs' proper role in maintaining school discipline. At that same meeting, Mickens recounted in detail his previous confrontation with SRO Nixon at Boone Middle School.

Soon thereafter, Superintendent Reynolds asked Rizer to compile a list of alleged problems with Mickens's behavior during his four days of work at McLaughlin Middle School. Rizer prepared for Reynolds an August 8, 1997, memorandum, in which Rizer reported criticism of Mickens by several other McLaughlin employees. For example, in her August 7, 1997, letter to Rizer, Earline McDonald ("McDonald"), a teacher at McLaughlin Middle School, wrote:

> Mr. Mickins [sic] looked at me with a very disdainful look, and, from that point on, used a tone that left us with no recourse except to sit and listen.... It is obvious that Mr. Mickins [sic] considers himself THE BOSS.
>
> . . . .
>
> During this whole segment of the meeting, Mr. Mickins [sic] sat staring around the room with a look on his face that left me with an uneasy feeling. He looked angry, and unhappy. I need some reassurance that he can deal with our faculty without his dislike and anger coloring his actions.

(Doc. 22). Similarly, Alan Jostes's August 10, 1997 letter to Rizer explained: "Mr. Mickens is very unpredictable and difficult to work with. He goes from talking calmly to yelling without notice. I am concerned for each child on this campus" (Doc. 22). Rizer's memorandum conclud-

ed, "I personally have some concerns about Mr. Mickens; one minute he is calm and the next minute he is very angry. This man has a lot of anger and I feel something serious could happen when he is in his angry state. I do not feel comfortable [with] him being here" (Doc 22).

Rizer also provided written criticism of Mickens prepared by Gene Carroll ("Carroll") and Russell Aaron ("Aaron"), both teachers and Mickens's colleagues at McLaughlin. Among other things, Aaron's statement (Doc. 22) recounted that during his duty at the McLaughlin campus, Mickens once called Carolyn Baldwin, the School Board's assistant superintendent, a "fat bitch" and announced that he was "suing her, Glenn Reynolds and all those Bitches over there" (once again, Mickens denied this incident at trial).

On August 29, 1997, Reynolds sent Mickens a letter stating that Mickens's actions constituted misconduct in office and provided just cause for his termination as assistant principal. Accordingly, Reynolds recommended that the School Board remove Mickens as assistant principal and re-assign him as a teacher. On September 9, 1997, the School Board unanimously voted to approve Reynolds's recommendation, terminated Mickens's assistant principal contract, and issued Mickens a teaching contract. Because Mickens ultimately refused to accept the teaching contract and refused to report for duty as a teacher, the School Board terminated his employment in January, 1998.

Mickens challenged his termination. In August, 1999, Mickens received a formal hearing before a Florida administrative law judge, Lawrence Stevenson ("the ALJ").[3] In July, 2000, the School Board

---

**3.** Mickens's administrative hearing was originally assigned to William R. Cave. However, following Mickens's repeated allegations of racial and institutional bias, Judge Cave granted Mickens's motion for recusal on March 5, 1999, and the case was reassigned

formally adopted, but only in part, the ALJ's recommendations, reinstated Mickens's assistant principal contract for the earlier 1997–98 school year, awarded back pay and benefits, and rejected the ALJ's recommendation to enter into assistant principal contracts with Mickens for any future year. The School Board offered Mickens prospective employment as a teacher but, as stated earlier, Mickens refused the offer.

## ANALYSIS

### I.

■ "A plaintiff may seek redress for discrimination under the ADA if that individual is a 'qualified individual with a disability.'" *Slomcenski v. Citibank,* 432 F.3d 1271, 1279 (11th Cir.2005). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities if such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). A "qualified individual with a disability" means a person who is actually disabled, recorded as disabled, or "regarded as" disabled. *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 478, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

■ Mickens claims neither a disability nor a record of disability but argues instead that the School Board regarded him as disabled. To trigger the "regarded as" provision of the ADA, "it is necessary that a covered entity entertain misperceptions about the individual." *Sutton,* 527 U.S. at 489, 119 S.Ct. 2139. A misperception exists if an employer believes "either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Id.*

■ Challenged by the School Board's Rule 50(b) motion to identify any evidence in the record to support the conclusion that the School Board mistakenly regarded him as disabled, Mickens responds that several School Board employees characterized Mickens "in a manner confirming their perception that [Mickens] had emotional illness problems, even though [he] had none" (Doc. 258 at 6). Specifically, Mickens relies on (1) the School Board's request that Mickens receive counseling through an employee assistance program; (2) the School Board's request that Mickens undergo a psychological evaluation; (3) Killebrew's testimony that Mickens became "really upset" on May 8, 1997, "was behaving irrationally," and was "very loud, and irate, and angry, and upset"; (4) Killebrew's May 8, 1997, letter to Mickens recommending that Mickens leave work for the afternoon due to his "insubordination and disrespectful behavior"; (5) Killebrew's May 8, 1997, letter to Reynolds requesting Mickens's reassignment for "failing to behave in a professional manner"; (6) Reynolds's testimony describing Mickens as "combative," "confrontational," "defensive," "agitated," and "disrespectful"; (7) McDonald's August 7, 1997, letter to Rizer observing that Mickens "considers

to Lawrence Stevenson (Doc. 23 at 8). Similarly, Mickens has repeatedly accused both the United States District Judge and the United States Magistrate Judge assigned to this case of "Institutionalized Racism" and twice demanded (unsuccessfully) their recusal (Docs. 76, 101,103).

himself THE BOSS" and appears "angry and unhappy"; (8) Rizer's August 8, 1997, memo to Reynolds describing Mickens's "threatening tone," revealing that "one teacher wondered how many personalities Mr. Mickens had," and concluding that Mickens "seemed not to have his act together" because "he did a lot of rambling"; and (9) Jostes's August 10, 1997, letter to Rizer noting that "Mickens is very unpredictable and difficult to work with. He goes from talking calmly to yelling without notice."

Neither any nor all of the evidence highlighted by Mickens provides a basis for a rational juror's finding that the School Board regarded Mickens as disabled by a mental impairment. Instead, the School Board's employees' characterizations of Mickens as "really upset," "insubordinate," "volatile," "disrespectful," "confrontational," "combative," "defensive," "agitated," "irrational," "loud," "irate," "angry," "unprofessional," "unhappy," "threatening," "unpredictable," and "difficult," including testimony as to Mickens's "uncharacteristic behavior" and his tendency to "fly off the handle," demonstrate (rather persuasively) Mickens's ongoing conflict with his supervisors and colleagues in the workplace. As a matter of law, "[s]uch conflicts do not rise to the level of a mental impairment under the ADA." *Watson v. City of Miami Beach,* 177 F.3d 932, 935 (11th Cir.1999).

■■ At most, Rizer's August 8, 1997, memo to Reynolds observing that Mickens "seemed not to have his act together" and repeating a teacher's speculation as to "how many personalities Mr. Mickens had" evidences the School Board's legitimate concern that Mickens, after years of satisfactory service, suddenly became emotionally volatile. Emotional volatility or imbalance is not a disability—not a "substantially limiting" mental impairment under the ADA. *Watson,* 177 F.3d at 935;

*Stewart v. County of Brown,* 86 F.3d 107, 111 (7th Cir.1996) (holding that an excitable, emotionally imbalanced individual is not "disabled" under the ADA). As a matter of law, "[p]ersonality conflicts among coworkers (even those expressed through the use [or misuse] of mental health terminology) generally do not establish a perceived impairment on the part of the employer." *Lanman v. Johnson County, Kansas,* 393 F.3d 1151, 1157 (10th Cir.2004); *Cody v. CIGNA Healthcare of St. Louis, Inc.,* 139 F.3d 595, 599 (8th Cir. 1998) (holding that an employer's "mere knowledge of behavior that could be associated with an impairment" fails to show that the employer regarded the employee as disabled).

■ Likewise, the School Board's request that Mickens undergo a psychological evaluation fails to establish that the School Board regarded Mickens as disabled. *Sullivan v. River Valley School Dist.,* 197 F.3d 804, 811 (6th Cir.1999) ("A request for an evaluation is not equivalent to treatment of the employee as though he was substantially impaired."), *cert. denied,* 530 U.S. 1262, 120 S.Ct. 2718, 147 L.Ed.2d 983 (2000); *Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 885 (6th Cir.1996) ("While the defendant may have perceived that [the plaintiff's] health problems were adversely affecting her job performance, there is no evidence that the defendant regarded [the plaintiff] as being unable to care for herself or to perform all of the duties of her job."). An employer remains entitled to explore the cause of an employee's aberrant behavior without violating the ADA. *See Sullivan,* 197 F.3d at 810.

Reynolds testified that he requested the psychological evaluation because of Mickens's uncharacteristic behavior. Reynolds's trial testimony is corroborated by his May 14, 1997, letter to Mickens, which stated "I have required the evaluation to

provide me with an independent, professional opinion as to whether there are stress-related or medical reasons for the reported behaviors which had not been evidenced in your previous work experience. The information will help me in making decisions relating to behaviors which have been repeatedly reported and/or investigated" (Doc. 22).

Reynolds's unrebutted testimony and his May 14, 1997, letter reveal that the School Board sought a psychological evaluation not because the School Board regarded Mickens as mentally impaired but because, as a governmental entity responsible for the well-being of school children subject to Mickens's jurisdiction as assistant principal for discipline, the School Board was obligated to ensure Mickens's fitness and, therefore, to explore professionally Mickens's uncharacteristic behavior.[4] "The steps taken to reassure an employer that an employee is fit for duty where there is a legitimate concern about an employee's ability to perform a particular job are not proof that the employer regarded the employee as disabled." *Krocka v. City of Chicago,* 203 F.3d 507, 515 (7th Cir.2000). The mental and emotional fitness of those charged with the well-being of school children is among the most vivid and essential examples of this "legitimate concern."

The School Board's requirement that Mickens receive counseling from the employee assistance program provides an even weaker foundation for the contention that the School Board regarded Mickens as mentally impaired. On April 30, 1997, following the dispute with the SRO at Boone Middle School, Mickens received a written reprimand for unprofessional behavior directing him to seek counseling through an employee assistance program. This letter instructed Mickens to "get counseling through the Employee Assistance Program in the hope that it may help you understand the situation better" (Doc. 22). Nothing in this directive remotely suggests that the School Board regarded Mickens as mentally impaired or otherwise disabled.

Testifying at trial, Mickens failed to identify any School Board employee who perceived him as mentally impaired or disabled. To the contrary, Mickens proudly informed the jury during his cross-examination: "The only thing that anyone in Polk County had ever told me before this so-called incident was that Ron Mickens was like a Superman. And I got praise and blessings from everybody. Everybody respected me" (Doc. 275). Finally, Mickens fails to identify the mental disorder (or even the medical symptoms of the disorder) that the School Board purportedly regarded him as having.

■ Of course, even assuming that the School Board perceived Mickens as suffering from some unspecified condition, Mickens presents no evidence from which a reasonable jury could find that, because of this perceived impairment, the School Board considered Mickens "substantially limited in one or more major life activities." 42 U.S.C. § 12102(2). The ADA fails to define both "substantially limits" and "major life activities." The Equal Employment Opportunity Commission's ("EEOC") implementing regulations define the term "major life activities" to include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). An indi-

---

4. Mickens's curious insistence that the School Board requested a psychological exam because it regarded him as disabled and that the School Board obviously regarded him as disabled because it requested a psychological exam is a circular argument in search of a causal antecedent.

vidual is "substantially limited" if either (1) unable to perform a major life function or (2) "significantly restricted as to the condition, manner or duration" under which the individual can perform a major life function. 29 C.F.R. § 1630.2(j). The term "substantially limited" must be "interpreted strictly to create a demanding standard." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

Some doubt exists whether working and otherwise interacting with others qualify as "major life activities." *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (noting the conceptual confusion that results from defining a "major life activity" under the ADA to include working); *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 15 (1 st Cir.1997) (rejecting the "ability to get along well with others" as a "remarkably elastic," "unworkable," and "problematic" example of a "major life activity" under the ADA). Even assuming that working and interacting with others both qualify as major life activities, Mickens still must prove that the School Board considered him "significantly restricted in [his] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1327 (11th Cir.1998). In sum, Mickens must prove that the School Board regarded him as "precluded from more than one type of job, a specialized job, or a particular job of choice." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

Mickens presents no evidence from which a reasonable jury could find that the School Board regarded him as significantly restricted in his ability to perform either a class of jobs or a broad range of jobs. The mere inability to work for a specific employer or perform a particular job (or one aspect of a job) does not substantially limit a person's ability to work under the ADA. 29 C.F.R. § 1630.2(j)(3). Mickens argues that the School Board denied him "an opportunity to work in the District at any management or supervisory level position, whether as an assistant principal, principal, or other position with comparable duties" (Doc. 258 at 3). However, the School Board's offer of a teaching contract to Mickens reveals that the School Board regarded Mickens as unable to perform, at most, only the job of assistant principal. As a matter of law, a person is not regarded as disabled under the ADA simply because his employer considers him unable to perform one job. *Sutton*, 527 U.S. at 492, 119 S.Ct. 2139; *Roberts v. Rayonier, Inc.*, 135 Fed.Appx. 351, 356 (11th Cir.2005). In the absence of any evidence to the contrary, the School Board's offering to Mickens a teaching contract demonstrates that the School Board did not view him as substantially limited in the major life activity of working.

Mickens also fails to present any evidence from which a reasonable jury could find that the School Board regarded him as substantially impaired in the major life activity of interacting with others. Because "mere trouble getting along with coworkers is not sufficient to show a substantial limitation," Mickens must show that his "relations with others were characterized on a regular basis by severe problems; for example, consistently high levels of hostility, social withdrawal, or failure to communicate when necessary." *McAlindin v. County of San Diego*, 192 F.3d 1226, 1235 (9th Cir.1999), *cert. denied*, 530 U.S. 1243, 120 S.Ct. 2689, 147 L.Ed.2d 961 (2000). In his response to the

School Board's Rule 50(b) motion, Mickens ironically relies on evidence demonstrating that, in fact, no one perceived Mickens as either socially withdrawn or otherwise unable to communicate when necessary. To the contrary, the School Board's employees characterized Mickens as typically assertive and self-expressive.

 As to whether the School Board regularly characterized Mickens as exhibiting "consistently high levels of hostility," the evidence reveals only that Mickens's inconsistent temperament caught the attention of his employer. Evidence of Mickens's inconsistent temperament is revealed both in Rizer's August 8, 1997, letter to Reynolds observing that "[o]ne minute he is calm and the next minute he is very angry" and Jostes's August 10, 1997, letter to Rizer noting that "Mickens is very unpredictable and difficult to work with. He goes from talking calmly to yelling without notice." At most, this evidence proves only that the School Board regarded Mickens as volatile during work, a legally insufficient basis for proving disability under the ADA. *Watson v. City of Miami Beach,* 177 F.3d 932, 935 (11th Cir.1999); *Lanman v. Johnson County, Kan.,* 393 F.3d 1151, 1157 (10th Cir.2004). As the Supreme Court noted in *Sutton,* an employer triggers no remedy under the ADA by adjusting the conditions of employment, even adversely to the employee, to account reasonably and cautiously for physical or mental characteristics that are worrisome to the employer but not disabling to the employee (that is, which may be "limiting, but not substantially limiting"). 527 U.S. at 489–90, 119 S.Ct. 2139.

Of course, Mickens's claim is further undermined by the School Board's offering him a teaching contract. A teaching job obviously requires constant interaction with others, including children, parents, other teachers, and administrators. Un-

surprisingly, Mickens fails to explain why the School Board would offer him an opportunity to teach while simultaneously regarding him as substantially limited in the activity of interacting with others. Accordingly, Mickens fails to provide a sufficient basis for a reasonable jury to find that the School Board regarded Mickens as substantially limited in his interaction with others.

In sum, Mickens fails to identify any evidence by which a reasonable jury could conclude that the School Board regarded Mickens as mentally impaired or otherwise disabled. Accordingly, Mickens fails to demonstrate that he is "a qualified individual with a disability" under the ADA. Failing to establish that he is "a qualified individual with a disability," Mickens cannot possibly prove a violation of the ADA and his claim fails.

### II.

Alternatively, Mickens argues that under the ADA "an employee can bring a claim under § 12112(d)(4)(A) against an employer even if the employee is not a qualified individual with a disability" (Doc. 258 at 7). *See Conroy v. New York State Dep't of Corr. Servs.,* 333 F.3d 88, 94–95 (2d Cir.2003); *Fredenburg v. Contra Costa County Dep't of Health Servs.,* 172 F.3d 1176, 1181–82 (9th Cir.1999); *Cossette v. Minnesota Power & Light,* 188 F.3d 964, 969–70 (8th Cir.1999); *Roe v. Cheyenne Mountain Conference Resort, Inc.,* 124 F.3d 1221 (10th Cir.1997). The School Board responds (Doc. 254) that neither the express language nor the legislative history of the ADA provides a cause of action pursuant to 42 U.S.C. § 12112(d) for a plaintiff who is not a "qualified individual with a disability." *See Adler v. I & M Rail Link, L.L.C.,* 13 F.Supp.2d 912, 935–37 (N.D.Iowa 1998); *Griffin v. Steeltek, Inc.,* 964 F.Supp. 317, 318–19 (N.D.Okla.

1997), *rev'd,* 160 F.3d 591 (10th Cir.1998); *Varnagis v. City of Chicago,* No. 96–6304, 1997 WL 361150, *6–*7 (N.D.Ill. June 20, 1997); *Armstrong v. Turner Indus., Ltd.,* 950 F.Supp. 162, 166–68 (M.D.La.1996), *aff'd on other grounds,* 141 F.3d 554 (5th Cir.1998).

The Eleventh Circuit has deferred answering whether one who is not a "qualified individual with a disability" may nevertheless invoke the medical examination protections of the ADA. *Roberts v. Rayonier, Inc.,* 135 Fed.Appx. 351, 361 n. 7 (11th Cir.2005); *Watson v. City of Miami Beach,* 177 F.3d 932, 935 (11th Cir.1999) ("This Court has not addressed whether this [medical examination] provision applies to a non-disabled employee."). In an unpublished opinion, the district court on remand in *Roberts v. Rayonier, Inc.* held

that a plaintiff "determined not to be disabled is entitled to the protection of 42 U.S.C. § 12112." *Roberts v. Rayonier, Inc.,* No.3:03–cv–55–J–025TEM, 2005 WL 3500320, at *2 n. 1 (M.D.Fla. December 21, 2005). However, the district court's order omits any elaboration of the result. The Third, Fifth, and Seventh Circuits also have deferred resolution of this issue. *Tice v. Centre Area Transportation Authority,* 247 F.3d 506, 517 (3d Cir.2001); *Armstrong v. Turner Indus., Inc.,* 141 F.3d 554 (5th Cir.1998); *Fuzy v. S&B Engineers & Const., Ltd.,* 332 F.3d 301 (5th Cir.2003).

 The court need not resolve this thorny question of statutory interpretation to resolve the School Board's Rule 50(b) motion. Even adopting the interpretation of the ADA urged by Mickens,[5] Mickens's

---

**5.** In the absence of definitive Eleventh Circuit authority, the jury instruction on the ADA claim comported with the statutory interpretation urged by Mickens:

The plaintiff's third claim arises under a federal law commonly known as the Americans with Disabilities Act (the ADA), which, among other things, regulates the circumstances in which an employer may request the medical or psychological examination of a present or prospective employee. The plaintiff claims that the School Board unlawfully required the plaintiff to submit to a medical and psychological examination at a time when the School Board did not have a genuine reason to doubt that the plaintiff could perform his job-related functions and that the plaintiff's actions in resisting the examination and declining to release the results caused the School Board to act adversely to the plaintiff's employment, discontinuing his services as an assistant principal. The School Board denies that it violated the plaintiff's rights under the ADA and asserts that the School Board had a genuine reason to doubt that the plaintiff could perform his job-related functions when the School Board required the plaintiff to undergo a medical and psychological examination.

In order to establish this claim under the ADA, the plaintiff in the first instance must

prove by a preponderance of the evidence that the plaintiff was required by the School Board to undergo a medical or psychological evaluation, in connection with plaintiff's employment. In this case, the School Board admits that the examination was required. The School Board may justify requiring the examination by proving by a preponderance of the evidence three things:

*First:* the required examination was job-related;

*Second:* the required examination was consistent with some business necessity, and

*Third:* the required examination was at a time when the School Board had a genuine reason to doubt that the plaintiff could perform his job-related duties.

In demonstrating that a requested medical or psychological examination is job-related and consistent with a reasonable business necessity, the employer has the burden to show that the examination is more than merely convenient or beneficial to the conduct of the business of the employer. The particular necessities of a business, of course, vary from workplace to workplace, and you may consider the particular requirements of each workplace, including the need for safety and security. Also, the employer must show that the particular re-

ADA claim against the School Board must fail because the School Board's request for a psychological examination was, as a matter of law, both "job-related" and "consistent with business necessity." *See* 42 U.S.C. § 12112(d)(4). A business necessity exists if an employer can demonstrate that (1) a medical examination is required to determine whether an employee can perform job-related duties, (2) the employer has some legitimate, non-discriminatory reason to question the employee's capacity to perform his duties, and (3) the examination is a "reasonably effective method" of achieving the employer's asserted business necessity. *Conroy v. New York State Dept. of Corr. Servs.*, 333 F.3d 88, 98 (2d Cir.2003).

The record is replete with evidence demonstrating that the School Board enjoyed several legitimate, non-discriminatory reasons to question whether Mickens could perform his duties as assistant principal. These include, for example, (1) Mickens's April 25, 1997, confrontation with SRO Nixon, during which Mickens ejected the SRO from the school's campus; (2) Dale McDonald's investigation, which determined that a loud and angry dispute between Mickens and SRO Nixon had transpired in front of the students; (3) Mickens's insubordinate May 8, 1997, confrontation with Eileen Killebrew, the principal of Boone Middle School, during which he confirmed that he was calling her "a liar"; (4) Killebrew's May 8, 1997, letter to Reynolds complaining about Mickens's disrespectful and insubordinate behavior and requesting Mickens's reassignment for "failing to behave in a professional manner."

Following the School Board's request for a psychological examination, Mickens continued to exhibit erratic behavior as evidenced by (1) Mickens's August 5, 1997, confrontation at McLaughlin Middle School with McLaughlin's dean of students, Alan Jostes, over the duty assignment list; (2) Mickens's subsequent confrontation with McLaughlin's principal, Ronald Rizer, during which Mickens threatened to summarily fire Jostes; (3) Mickens's conduct at an August 8, 1997, district-wide meeting of assistant principals, SROs, and deans of students where he openly challenged the SROs' authority on school campuses and demanded written clarification of the SROs' proper role in maintaining school discipline; (4) Rizer's August 8, 1997, memorandum to Reynolds repeating negative comments about Mickens by several McLaughlin administrators and teachers; (5) Earline McDonald's August 7, 1997, letter to Rizer requesting "some assurance that [Mickens] can deal with our faculty without his dislike and anger coloring his actions"; (6) Jostes's August 10, 1997, letter to Rizer describing Mickens as "unpredictable" and "difficult to work with" and stating unequivocally that Rizer was "concerned for each child on this campus"; and (7) Russell Aaron's written statement recounting that Mickens, while on the school campus, called Carolyn Baldwin, the School Board's assistant superintendent, a "fat bitch" and announced that he was "suing her, Glenn Reynolds and all those Bitches over there."

Whatever gloss Mickens may choose to put on these uncontested facts—and irrespective of whether the underlying accusations against Mickens are even true—the School Board with knowledge of this history had every right (and perhaps an obligation, given the law of employer liability

quest for an examination is not materially broader or more intrusive than reasonably necessary.

for negligent hiring and retention) to request information enabling a more comprehensive assessment of Mickens's fitness to work as an assistant principal in charge of discipline. "Employers must be able to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims." *Cody v. CIGNA Healthcare of St. Louis, Inc.*, 139 F.3d 595, 599 (8th Cir.1998). Indeed, a school board has an affirmative duty to screen and monitor the behavior of all employees.[6] "If a school district fails to monitor paranoid and agitated behavior in an employee, and harm to a child results, the school district could be legally liable for that harm." *Miller v. Champaign Community Unit School District*, 983 F.Supp. 1201, 1206–07 (C.D.Ill.1997).

■ As a matter of law, a school board's psychological examination of an employee is both "job-related" and "consistent with a business necessity" if that employee exhibits "even mild signs" of "paranoid or agitated behavior" that causes the school administration to question the employee's ability to perform essential job duties. *Miller*, 983 F.Supp. at 1206–07; *Sullivan v. River Valley School District*, 20 F.Supp.2d 1120 (W.D.Mich.1998) (holding that, following a breakdown of a teacher's interpersonal skills, a school district has both a right and a duty to determine the teacher's ability to perform his job duties), *aff'd*, 197 F.3d 804 (6th Cir.1999). In view of the uncontested record evidence, the School Board possessed legitimate, non-discriminatory reasons to question whether Mickens could reliably and responsibly perform his duties as assistant principal. Requesting a psychological examination constitutes "a reasonably effective method" of achieving the School Board's goal of determining whether Mickens could perform his duties. *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1291 (11th Cir.2002) ("We also observe that, on the facts of this case, Motorola could have properly required [under the ADA] a medical examination given Williams' recent behavior and threats.").

Because Mickens's volatile employment history raised legitimate concerns about his ability to perform his job, the School Board's request for a psychological examination was both job-related and consistent with business necessity. Mickens submits virtually no evidence of his own in rebuttal. *Tice v. Centre Area Transportation Authority*, 247 F.3d 506, 517 (3d Cir.2001) (holding that once doubts are raised about an employee's ability to perform his job, the employer may require a medical examination with a doctor of its choice); *Gajda v. Manhattan and Bronx Surface Transit Operating Authority*, 396 F.3d 187, 189 (2d Cir.2005) (same); *Yin v. State of California*, 95 F.3d 864, 867–68 (9th Cir.1996) (holding that under the business necessity exception of the ADA, if potential "health problems have a substantial and injurious impact on an employee's job performance, the employer can require the employee to undergo a physical examination designed to determine his or her ability to work, even if the examination might disclose

---

**6.** If an employer is barred by the ADA from precautionary mental and physical examination of a suspect employee, another issue arises: Does the ADA's prohibition against mental and physical examination offer a legal defense to an employer's arguably "negligent" retention of an employee who is mentally or physically suspect but about whom the employer is barred by the ADA from preemptively inquiring through a mental or physical examination? The "job-related" and "business necessity" exceptions of the ADA's medical examination prohibition provide no dependable answer to an employer's predictable question, "Just how suspect must an employee become before the ADA permits an employer to intervene?"

whether the employee is disabled or the extent of any disability").

### III.

Mickens's ADA claim also fails because Mickens fails to establish a prima facie case of disability discrimination. The ADA prohibits an employer's request for a medical or psychological examination under § 12112(d)(4) only if the employer seeks to ascertain "whether such employee is an individual with a disability" or "the nature or severity of the disability." 42 U.S.C. § 12112(d)(4). Further, a plaintiff proceeding under 42 U.S.C. § 12112(d)(4) must establish a prima facie case of discrimination. *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1289 (11th Cir.2002) (holding that the plaintiff's medical examination claim under the ADA failed because the plaintiff never established a prima facie case of discrimination); *Sullivan v. River Valley School District*, 20 F.Supp.2d 1120, 1126 (W.D.Mich.1998) ("Even if the Plaintiff could establish that Defendants perceived him as having a disability, his ADA claim would nevertheless fail because he cannot show that Defendants' request that he undergo psychological examination was discriminatory."), *aff'd*, 197 F.3d 804 (6th Cir.1999); *Barnes v. Cochran*, 944 F.Supp. 897, 905–06 (S.D.Fla.1996), *aff'd*, 130 F.3d 443 (11th Cir.1997). To establish a prima facie case of discrimination under the ADA, Mickens must show that the School Board discriminated against him because of some real or perceived disability and that he was otherwise qualified to perform the essential functions of his job. *Williams*, 303 F.3d at 1290; *Gordon v. E.L. Hamm & Assoc.*, 100 F.3d 907, 910 (11th Cir.1996).

In the absence of any evidence that the School Board's request for a psychological examination was discriminatory, Mickens cannot establish a prima facie case of discrimination. As discussed previously, nothing in the record suggests that the School Board either suspected Mickens of being disabled or sought to learn the nature or severity of any purported disability. Superintendent Reynolds's unrebutted testimony and his May 14, 1997, letter to Mickens requesting the examination reveal that the School Board sought a psychological evaluation not because it regarded Mickens as disabled but to better understand (and to mitigate) Mickens's uncharacteristic and unprofessional behavior. Mickens presented nothing at trial and otherwise fails to identify any evidence in the record to contradict this reasonable explanation.

The undisputed record evidence reveals that the School Board terminated Mickens for failing to report for duty as a teacher, not because of any real or perceived disability. Likewise, Mickens offers no evidence that the School Board demoted him from assistant principal to teacher because it learned the existence of some disability from his psychological examination. Although Mickens submitted to a psychological examination, he refused to allow disclosure of the examination's results to the School Board. Indeed, Mickens repeatedly testified at trial that his psychological examination yielded no report or other findings. Accordingly, Mickens fails to present any meaningful evidence for the jury to conclude that the School Board's actions were motivated by discrimination because of any real or perceived disability. *See Sullivan v. River Valley School District*, 197 F.3d 804, 808–10 (6th Cir.1999); *Larsen v. Miller–Dwan Medical Center, Inc.*, No. 00–2017 (PAM/RLE), 2001 WL 1325963 (D.Minn. Oct.2, 2001).

As to whether Mickens was otherwise qualified to perform the essential functions of his job, "[a]n employee's ability to handle reasonably necessary

stress and work reasonably well with others are essential functions of any position. Absence of such skills prevents the employee from being 'otherwise qualified.'" *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1290 (11th Cir.2002) (citing *Palmer v. Circuit Crt. of Cook County*, 117 F.3d 351 (7th Cir.1997)). Again, the record contains overwhelming evidence of Mickens's inability to work harmoniously with fellow teachers, administrators, and other School Board employees. Mickens therefore fails to demonstrate that he was otherwise qualified to perform the essential functions of his job as assistant principal of discipline. Accordingly, Mickens fails to establish a prima facie case of disability discrimination and his ADA claim must fail.

## IV.

 Finally, even assuming that Mickens has proven a violation of the medical examination and inquiry prohibition of the ADA, Mickens may not recover damages from the School Board absent some cognizable injury-in-fact. Damages under section 12112(d) of the ADA must be based not merely on a technical violation of the statute but on some cognizable injury-in-fact of which the statutory violation is a legal and proximate cause. *Tice v. Centre Area Transportation Authority*, 247 F.3d 506, 520 (3d Cir.2001) (holding that "there is no indication in either the text of the ADA or in its history that a technical violation of § 12112(d) was intended to give rise to damages liability"); *Cossette v. Minnesota Power & Light*, 188 F.3d 964, 971 (8th Cir.1999) (remanding for a determination as to whether the improper medical inquiry caused a "tangible injury" capable of supporting the suit); *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 562 (5th Cir.1998) (dismissing for lack of a cognizable injury an ADA claim for damages based on an improper medical examination).

 The only evidence Mickens presents that even speaks to his injury is his statement at trial that "Personally, I had never felt—I never felt a feeling like that before in my entire life. I was in some type of state from the psychologist's house to back home that I had never felt. I wondered in my mind if this is what a female felt like if they had been raped. Because that is the feeling that I had in route" (Doc. 274). However, an injury-in-fact under § 12112(d) requires more that "bare allegations of mental/emotional distress, mental anguish, stress, and inconvenience" but requires "evidence as to actual existence of such harms." *Tice v. Centre Area Transportation Authority*, 247 F.3d 506, 520 (3d Cir.2001). Mickens presents no evidence of loss of sleep, loss of appetite, social stigma, loss of companionship, increased stress, loss of focus, clinical depression, or any other legally cognizable measure of non-economic injury.

Mickens fails to present any evidence that the psychological examination, which yielded no findings or report whatsoever, actually and tangibly impacted his mental health or well-being. Neither Mickens's direct examination nor that of his wife elicited any evidence demonstrating a change in his emotional condition between the pre-exam Mickens and the post-exam Mickens. Rather, on cross-examination, Mickens boasted that he has always been able to handle stress:

> Mr. Conner [the School Board's attorney], there is no amount of stress that I—you know, I don't have a limit. I can take just about anything. You know, I am an experienced—I have an experienced background. I have a very high level of tolerance. So I may get to be assertive and very firm but I am not a person that stress out. I know how to control my thinking. Don't let anything

do my thinking for me. I know how to relieve any stress. I know how to take care of myself and take care of my health. I don't have those type of stress. You can punish me. I can tolerate just about anything anybody throw out to me. Okay?

In sum, Mickens's sole reliance on his statement that he was in "some type of state" and "wondered in [his] mind" whether "this is what a female felt like if they had been raped" (Doc. 274) fails to prove a cognizable injury-in-fact for which the psychological examination was a legal and proximate cause. The jury's award to Mickens of $300,000 in damages must not stand. *Tice v. Centre Area Transportation Authority,* 247 F.3d 506, 520 (3d Cir. 2001); *Cossette v. Minnesota Power & Light,* 188 F.3d 964, 971 (8th Cir.1999); *Armstrong v. Turner Indus., Inc.,* 141 F.3d 554, 562 (5th Cir.1998); *Barnes v. Cochran,* 944 F.Supp. 897, 905–06 (S.D.Fla.1996), *aff'd,* 130 F.3d 443 (11th Cir.1997).

Accordingly, the School Board's Rule 50(b) motion (Doc. 253) for judgment as a matter of law is **GRANTED.** Consequently, the Clerk is directed to enter judgment for the School Board and against Mickens on Count III (the ADA claim).

ORDERED in Tampa, Florida, on April 4, 2006.