[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 19-11341

Non-Argument Calendar

_____

RAYMOND B. BALDWIN,

Plaintiff-Appellant,

*versus*

SECRETARY OF VETERANS AFFAIRS,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 5:15-cv-00594-MMH-PRL

_____

Before ROSENBAUM, NEWSOM, and BRASHER, Circuit Judges.

PER CURIAM:

Raymond Baldwin appeals the district court's decision granting summary judgment to the Secretary of the U.S. Department of Veterans Affairs ("VA") on his claims of disability discrimination under the Rehabilitation Act of 1973. *See* 29 U.S.C. § 794. On appeal, he contends that the VA unlawfully ordered him to undergo a psychological-fitness-for-duty evaluation for his job as a VA police officer after he injured his finger in an off-duty accidental-discharge incident, and that the evaluation was tainted by false and illegally obtained information. After careful review, we conclude that the VA properly required the fitness-for-duty evaluation, which Baldwin failed, and that there is no evidence to support a finding that the alleged problems with the evaluation or his subsequent removal as a police officer were due to his claimed disability. So we affirm the grant of summary judgment.

## I.

Baldwin began working as a police officer at a VA hospital in September 2002. In August 2008, Baldwin shot himself in his left pinky finger while driving off duty. According to Baldwin, he was driving while handling a gun, which he had recently loaded at a stop sign, when his truck ran off the road due to inattention and he hit a "rough spot" that caused the gun to fly from his grasp. The gun discharged when he reached to grab it, and the bullet passed through his finger and the steering wheel before lodging in the

truck by the windshield.  As a result of this incident, Baldwin was on leave until October 2008, when he returned to work on light-duty status.  By early February 2009, his finger had healed, and his physician released him to return to work without restriction.

Meanwhile, in late January 2009, the VA informed Baldwin that, because of concerns stemming from the August 2008 incident, he would need to undergo a psychological fitness-for-duty evaluation before returning to his full duties as a police officer.  In addition, Acting Police Chief Milton Gordon said he believed such an examination was warranted in light of "very bizarre" statements Baldwin had made to coworkers about Baldwin's personal life, including having been accused of pedophilia and incest.

A VA staff psychologist conducted a psychological evaluation and determined that Baldwin had "a long history of interpersonal conflict and difficulty managing anger," a lengthy legal record indicating disregard for the law or poor judgment, and a lack of emotional stability.  The psychologist expressed "serious reservations about [Baldwin] being authorized to carry a firearm in the line of duty."  Based on that evaluation, a VA occupational health physician found that Baldwin was "unfit for duty as a police officer" and "should not be authorized to carry a firearm in the line of duty."

As a result of the failed fitness-for-duty examination, the VA removed Baldwin from his position as a police officer.  Later, the

VA reassigned him to another position with the agency, at the same grade and pay.[1]

Believing that the reasons for the fitness-for-duty examination were specious and his job transfer unwarranted, Baldwin filed several equal employment opportunity ("EEO") complaints along with a Merit Systems Protection Board ("MSPB") action challenging the VA's actions against him. After proceeding through the full administrative process for his EEO and MSPB actions, but failing to prevail in either forum, Baldwin filed the current action in federal district court.

Baldwin alleged various disability discrimination, retaliation, and hostile work environment claims, among others. In a comprehensive order, the district court granted summary judgment to the VA, finding that the evidence was insufficient for Baldwin to prevail on any of his claims. Baldwin now appeals.

## II.

We review *de novo* the district court's grant of summary judgment, viewing the record in the light most favorable to the nonmoving party—here, Baldwin. *Roy v. Ivy*, 53 F.4th 1338, 1346 (11th Cir. 2022). Summary judgment is appropriate where the evidence "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). No genuine issue of material fact exists unless

---

[1] Nonetheless, the VA advises that Baldwin was rehired for a police officer position in November 2020.

a "reasonable jury could return a verdict in favor of the nonmoving party." *Baxter v. Roberts*, 54 F.4th 1241, 1253 (11th Cir. 2022) (quotation marks omitted).

We liberally construe the filings of *pro se* parties. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008). Nevertheless, "issues not briefed on appeal by a *pro se* litigant are deemed abandoned." *Id.* Nor are passing references to an issue, without supporting arguments or authority, sufficient to raise the issue for appeal. *Sapuppo v. Allstate Floridian Ins.*, 739 F.3d 678, 681–82 (11th Cir. 2014). We may affirm on any ground supported by the record. *United States v. Campbell*, 26 F.4th 860, 879 (11th Cir. 2022) (*en banc*).

### III.

The crux of Baldwin's argument on appeal is that the VA did not have the authority to conduct the fitness-for-duty examination in the first place. In Baldwin's view, the August 2008 accidental-discharge incident was insufficient to justify a psychological evaluation. Knowing this, according to Baldwin, VA staff conspired to fabricate false and defamatory accusations against him as further support for the fitness-for-duty examination. He further asserts that the VA improperly obtained his criminal-history information and misrepresented that history in the examination.

### A.

Liberally construing his filings, Baldwin appears to challenge the decision to order a fitness-for-duty examination under 42 U.S.C. § 12112(d)(4)(A), as incorporated by the Rehabilitation Act. *See* 29 U.S.C. § 794(d). That section states,

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

42 U.S.C. § 12112(d)(4)(A). Notably, § 12112(d)(4)(A) "protects employees who are not disabled." *Owusu-Ansah v. Coca-Cola Co.*, 715 F.3d 1306, 1310 (11th Cir. 2013). Although the district court did not construe Baldwin's claim as brought under this section, we may reach beyond that court's reasoning. *See Campbell*, 26 F.4th at 879.

A psychological fitness-for-duty evaluation is job-related and consistent with business necessity when, among other reasons, the employer has "information suggesting that an employee is unstable and may pose a danger to others." *Owusu-Ansah*, 715 F.3d at 1312. These concerns are heightened in police departments, which "place armed officers in positions where they can do tremendous harm if they act irrationally." *Watson v. City of Miami Beach*, 177 F.3d 932, 935 (11th Cir. 1999). Nothing in the Rehabilitation Act or the ADA "require[s] a police department to forgo a fitness for duty examination to wait until a perceived threat becomes real or questionable behavior results in injuries." *Id.* at 935.

Regulations applicable to federal agencies further define when and how medical or psychological examinations may be conducted. *See* 5 C.F.R. § 339.301. When an employee occupies a position that has medical standards or physical requirements, the

agency may require a medical examination whenever there is reason to question the employee's continued capacity to meet those requirements. *See id.* § 339.301(b)(3). Any psychological assessment must be limited to the person's mental fitness as it directly relates to successfully performing the duties of the position without significant risk to the employee or others. *Id.* § 339.301(e)(2).

Here, the evidence, viewed in the light most favorable to Baldwin, fails to show that the VA violated the Rehabilitation Act or applicable regulations by ordering a fitness-for-duty examination. VA police officers are subject to physical and mental requirements and are required to undergo yearly fitness-for-duty examinations. And undisputed evidence reflects that the VA had good reason to question Baldwin's mental fitness for duty. By his own account of the August 2008 accidental-discharge incident, Baldwin engaged in reckless behavior with a loaded gun while driving on a public street, posing a risk to others and injuring himself as a result. Because Baldwin carried a firearm as a police officer and was authorized to make arrests, the VA had objective grounds to question whether he could perform the essential functions of his position without unnecessarily endangering others, wholly apart from statements Baldwin allegedly made to coworkers about his personal life. *See* 5 C.F.R. § 339.301. Thus, we disagree with Baldwin's claim that the fitness-for-duty examination cannot be justified based solely on the August 2008 shooting incident and that the VA sought to cover up that fact by invoking false allegations against him.

Given the nature of Baldwin's position and the extremely questionable judgment he admittedly exhibited, which resulted in injury to himself, the fitness-for-duty examination was both job-related and consistent with business necessity.[2] *See Watson*, 177 F.3d at 935 (stating that police officers "can do tremendous harm if they act irrationally"); *see also Owusu-Ansah*, 715 F.3d at 1311–12. Accordingly, Baldwin cannot prevail at trial on a claim under § 12112(d)(4)(A), and summary judgment was appropriate.

**B.**

Baldwin also maintains that the fitness-for-duty examination was tainted by inaccurate information about his criminal history, which, in his view, was also improperly obtained by the VA.[3] He suggests that the VA rigged the fitness-for-duty examination to get rid of him, apparently as pretext for discriminatory animus.

The Rehabilitation Act prohibits federal agencies from discriminating in employment against an "otherwise qualified individual with a disability," including by failing to make reasonable accommodations to such an individual. *See* 29 U.S.C. § 794(a), (d)

---

[2] Baldwin's reliance on the "direct threat" regulation is misplaced. *See* 29 C.F.R. § 1630.2(r). The VA did not invoke that defense, and the question here is whether the fitness-for-duty examination was job-related and consistent with business necessity, not whether Baldwin was a direct threat.

[3] We deny Baldwin's request to strike the district court's references to the allegedly false criminal history from its order, which merely summarized information presented in the fitness-for-duty examination, which is part of the record in this case, whether accurate or not.

(incorporating the anti-discrimination standards of the Americans with Disabilities Act (ADA)); 42 U.S.C. § 12112.  The Rehabilitation Act also incorporates the ADA's anti-retaliation provision.  *See* 29 U.S.C. § 794(d); 42 U.S.C. § 12203(a).

Baldwin has not shown that the district court erred in granting summary judgment on his discrimination claims.  The only disability Baldwin has clearly identified for consideration is his finger injury.  And the only question to be resolved is whether Baldwin was subject to discrimination "solely by reason of . . . his disability," 29 U.S.C. § 794(a), not whether the process that led to his removal as a VA police officer more generally was fair or flawed.  *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1243, 1266 (11th Cir. 2018) ("The question to be resolved is not the wisdom or accuracy of [the employer's reasoning] . . . or whether the decision . . . was 'prudent or fair.'  Instead, 'our sole concern is whether unlawful discriminatory animus motivate[d]' the decision.").

Whatever its flaws, no reasonable jury could conclude that the fitness-for-duty examination was actually a pretext for discriminating against Baldwin because of a disability, nor does Baldwin clearly make an argument along those lines.  Plus, as the district court noted, the factual deficiencies Baldwin has identified do little to undermine the ultimate findings of the psychologist who performed the assessment.  Notably, as his deposition, Baldwin confirmed much of the criminal history recited in the fitness-for-duty examination, even if he disputed some details.  Accordingly, Baldwin has not offered sufficient evidence to support a finding that the

VA's proffered reasons for removing him as a police officer and denying reinstatement were a pretext for disability discrimination.

Finally, Baldwin has abandoned any challenge to the district court's resolution of his retaliation or hostile work environment claims by failing to address them on appeal. *See Timson*, 518 F.3d at 874. While he makes passing references to the VA's failure to comply with rules relating to the Family and Medical Leave Act ("FMLA"), he does not explain the relevance of these assertions, and he fails to address the district court's reasons for dismissing his FMLA claims for lack of subject-matter jurisdiction in his initial brief, so any argument in this regard is likewise abandoned. *See Sapuppo*, 739 F.3d at 681–82. Baldwin's arguments in the reply brief come too late. *See Timson*, 518 F.3d at 874 ("[W]e do not address arguments raised for the first time in a *pro se* litigant's reply brief.").

## IV.

For these reasons, we affirm the grant of summary judgment in favor of the VA on Baldwin's claims.

**AFFIRMED.**